UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANTONIO AUSTIN HANER, JR.,

    Plaintiff,

v.                                                                Case No. 3:25cv629-TKW-HTC

ANNA MARIE HOMMINGA,

    Defendant.
_____/

REPORT AND RECOMMENDATION

Plaintiff Antonio Austin Haner, Jr., has filed a civil rights complaint under 42 U.S.C. § 1983 (Doc. 1), a motion to proceed *in forma pauperis* (Doc. 2), and a motion for preliminary injunction (Doc. 3). After reviewing the complaint, the undersigned concludes this case should be transferred *sua sponte* to the District of Arizona pursuant to 28 U.S.C. § 1404.

**I.     Background**

Haner's complaint names Anna Marie Homminga and the City of Phoenix as Defendants. He also names fictitious parties he claims will be identified during discovery. The complaint sets forth the following allegations.

In March 2022, Defendant Homminga picked Haner up from the airport in Phoenix, Arizona, and took him to an empty parking lot, which Haner asserts was

an "unlawful detention." Homminga entered a nearby gas station and made a false report to police regarding Haner. Haner was arrested and taken to the police station.

At the station, the arresting officers told Haner "that due to a 'computer error' corroborated by the arrest report, … his rights had been violated, necessitating immediate release." At Haner's arraignment, a judge told him all counts were dismissed with prejudice and he was released. Haner maintains "no valid criminal case existed at the time of his release."

Haner left Arizona and moved to Florida. Several months later, Homminga moved to Florida to reestablish contact with Haner. Homminga also obtained a job as a correctional officer with the Florida Department of Corrections. Later, Haner and Homminga got into an altercation and Homminga made another false report to police which resulted in Haner's arrest. Haner made a deal with prosecutors whereby the charges were dropped after Haner paid court costs and attended a few anger management sessions. A related criminal case was also initiated against Haner in Florida but it ended favorably for him later that year.

Following the resolution of the Florida charges, Haner claims "he experienced multiple anomalous encounters with law enforcement." First, he says officers conducted an unannounced welfare check at his residence, claiming he "was allegedly holding his partner hostage." The claim was unfounded and resolved without incident. Two weeks later, officers conducted an identical welfare check,

again alleging a hostage situation.  Haner suggests these incidents were either due to "malicious reporting or institutional targeting," and "constitute retaliatory harassment under color of law."

Haner was granted a hearing in 2023 by the Michigan Licensing Authority regarding restoration of his driving privileges, "[t]o which Defendant Homminga had become a hostile witness."  Michigan advised Haner at the hearing "they would grant his appeal."  However, the City of Phoenix "put an unlawful hold on his license without his knowledge" and his inquiries to Michigan were denied "for frivolous, irrelevant cause[.]"

Despite the dismissal of the charges in Phoenix in March 2022, a second prosecution was initiated against Haner in February 2023 for the same charges "without new evidence, valid arraignment, or any oversight[.]"  Haner did not learn about the case until November 2024, when personnel at Eglin Air Force Base told him he had an out-of-state warrant.  Haner retained an attorney named Chance East from the law firm Mayes Telles to quash the warrant and resolve "the clearly flawed case[.]"  After the warrant was quashed, the prosecutor's office in Phoenix hired East; Mayes Telles assigned Daniel Fulce to be Haner's new attorney.[1]

---

[1] Haner also contends law enforcement in Florida "was seen reacting" to events in his Phoenix case; he claims a patrol car activated its lights and sirens in front of his residence in the middle of the night "at the same time" the arrest warrant from Phoenix was quashed.

At his first appearance, Haner told the City of Phoenix the charges had been dismissed with prejudice and that the prosecution was malicious. Fulce "attempted to call [Haner's] claims 'frivolous'" and tried to discuss plea deals "for a constructively known void case." After Haner "identified the shadows of the original dismissal with prejudice" and "requested the signed complaints for both cases," Mayes Telles dropped him as a client and attempted to withdraw from his case. The criminal case in Phoenix is currently "in détente, being vacated and pushed 2 months out awaiting [Haner's] 'appeal' … for the ruling that The City says never happened."

Based on the foregoing, Haner alleges Defendants: (1) violated his due process rights under the Fifth and Fourteenth Amendments "by instituting and maintaining void legal proceedings and suppressing exculpatory materials"; (2) maliciously prosecuted him in violation of the Fourth and Fourteenth Amendments by initiating and continuing legal proceedings against him with malice and without probable cause; (3) violated the First Amendment by retaliating against him for "prevailing in his legal matters and his exercise of protected rights"; and (4) denied him access to the courts in violation of the Fifth and Sixth Amendments by "withholding automatic filing acknowledgments," not responding to his FOIA requests, hiring his attorney, delaying proceedings, and reversing rulings to prevent appellate review. As relief, he seeks: (1) a declaration that the prosecution in

Phoenix violated his constitutional rights; (2) an injunction preventing Defendants from continuing or initiating any prosecution relating to the events described in the complaint; and (3) compensatory and punitive damages.

## II. Discussion

A civil action may be brought in: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Even when venue is proper, a court may transfer a case—"[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Here, Haner claims venue is proper in the Northern District of Florida under § 1391(b)(2) because he "and the primary Defendant reside in this District, [he] suffered actionable harm here, and Defendants' conduct caused direct consequences within this District, including professional and reputational injury." Doc. 1 at 3.

However, the undersigned concludes Arizona is a more convenient forum for this litigation.

First, a substantial part of the events or omissions giving rise to Haner's claims occurred in Arizona, not Florida. Haner alleges Homminga made a false report to police officers in Phoenix in March 2022 which resulted in his arrest there. He claims those charges were dismissed with prejudice, but the City nevertheless put a hold on his driver's license and is trying to prosecute him again in Arizona for the same charges. Haner's complaint—and his motion for preliminary injunction—are focused on the second prosecution in Phoenix. *See* Doc. 3 at 7 (alleging a substantial likelihood of success on the merits because the City of Phoenix lacked personal jurisdiction over him). And the evidence and witnesses related to the second prosecution, including Haner's counsel, are in Arizona (e.g. the individuals who filed the charges, the documentary evidence related to the charges).

In addition, Haner's complaint fails to establish the Northern District of Florida has personal jurisdiction over the City of Phoenix. Haner alleges "Defendants intentionally directed unlawful conduct at [him], a known Florida resident, with the foreseeable and realized consequence of causing reputational, professional, and legal harm within the Northern District of Florida." However, Haner has not alleged any facts to support the inference that officials in Phoenix knew he was a Florida resident when they reinstituted the criminal charges against

him or that the charges would have any effect in Florida. *See Jackson v. City of Harvey*, 2013 WL 3479512, at *2 (N.D. Ill. July 9, 2013) (concluding Illinois could not exercise personal jurisdiction over Indiana police officer whose "official actions in Indiana set in motion the eventual arrest of Plaintiff in Illinois" because nothing indicated officer "expressly aimed his actions at Illinois with the knowledge that they would cause harm to Plaintiff there").

Furthermore, while the complaint contains allegations about events in Florida, those claims are frivolous.[2] Haner cannot pursue a constitutional claim against Homminga for falsely reporting a crime to Florida law enforcement because she did not act under color of state law when she did so. *See Martinez v. Ashtin Leasing, Inc.*, 417 F. App'x 883, 885 (11th Cir. 2011) ("[T]he mere act of reporting a suspected crime to the police is insufficient to establish state action for purposes of a false arrest claim under § 1983."); *Boykin v. Bloomsburg Univ. of Penn.*, 893 F. Supp. 409, 417 (M.D. Pa. 1995) ("Providing false information to an arresting officer is not, by

---

[2] Likewise, while Haner suggests some of the events in the complaint involved a conspiracy or retaliation, he has alleged no facts to support: (1) the existence of a conspiracy; (2) his protected activity was adversely affected; or (3) a causal connectional between protected activity and the acts complained of. *See Collins v. Bates*, 2018 WL 5090845, at *7 (11th Cir. 2018) (finding the plaintiff's "vague and conclusory allegation that all of the defendants conspired against him was insufficient to establish the existence of a conspiracy for purposes of establishing a §§ 1983, 1985, or 1986 violation"); *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019) ("To state a § 1983 First Amendment retaliation claim, a plaintiff generally must show: (1) she engaged in constitutionally protected speech, such as her right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition.") (citation omitted).

itself, sufficient to state a claim against that private party under § 1983."). While Haner alleges Homminga is employed as a state correctional officer, her conduct stemmed from her personal relationship with Haner; nothing indicates she acted in her capacity as a state correctional officer when she made the allegedly false report. *See Bouye v. Marshall*, 102 F. Supp. 2d 1357, 1362 (N.D. Ga. 2000) (noting "[a] defendant acts under color of state law by 'acting with power possessed by virtue of the defendant's employment with the governmental entity'" and "[g]overnment employment alone … is insufficient") (quoting *Edwards v. Wallace Comty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995)). Haner's constitutional claims against Homminga, therefore, are frivolous.

Based on the foregoing, the District of Arizona is the more convenient forum for this case and it should transferred there pursuant to 28 U.S.C. § 1404(a).[3]

---

[3] "[T]here is a long-approved practice of permitting a court to transfer a case *sua sponte* under the doctrine of *forum non conveniens*, as codified at 28 U.S.C. § 1404(a), but only so long as the parties are first given the opportunity to present their views on the issue. Before transferring *sua sponte* under section 1404(a), the judge should, at minimum, issue an order to show cause why the case should not be transferred, and thereby afford the parties an opportunity to state their reasons." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (quotations and citations omitted). If Haner believes good cause exists for not transferring this case to the District of Arizona, he may present those arguments in his objections to this Report and Recommendation. *See Nalls v. Coleman Low Fed. Inst.,* 440 F. App'x 704, 706 (11th Cir. 2011) (affirming *sua sponte* transfer where the plaintiff was "given an opportunity to voice his objections to a transfer, which the district court considered and rejected").

Accordingly, it is RECOMMENDED:

1. That the clerk TRANSFER this case to the United States District Court for the District of Arizona.

2. That the clerk shall close the file.

At Pensacola, Florida, this 16th day of May, 2025.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.

Case No. 3:25cv629-TKW-HTC